## H. L. BRENEMAN V. BEAUMONT LUMBER CO. ET ...

### No. 1334.

**1.  Mechanic's Lien—Sub-contractor.**

Sub-contractors having liens under Act of April 5, 1889, are but subrogated to the rights of the principal contractor against the owner, and their claim to the balance due such principal on the contract is subject to such offsets, for sums paid out to complete the building on failure of the contractor, as the owners could have successfully pleaded against him.

**2.  Same—Constitution—Notice of Claim.**

W. and T. contracted jointly, with the owners in severalty of five adjoining lots, to erect a block of buildings thereon; and by separate contract, with the owner of two other lots adjoining the first five, to extend the block to cover them also: they sub-let the work on all seven lots, by one contract, to B.; who on its completion

served notice on the agent of the owners of the lots of a lien for labor and material for the entire building, claimed by him against the seven lots, without designating the items charged against any particular lots or owners. A sum due W. and T. under the contract with the owners of the five lots remaining unpaid, the claim of W. and T., who had failed, was by their receiver sold under orders of court to a purchaser, who intervened in the suit to foreclose the sub-contractor's lien claiming that it was invalid for want of a proper notice (the notice not having designated the items furnished for building on the five lots). The sum owing by the owners of the five lots under the contract was paid into court.  Held:

1. The lien was given B. by the constitution, the legislature having power to make reasonable regulations to facilitate its enforcement, but not to destroy or unreasonably hamper it.

2. The object of the act in requiring notice to the owner of each "item as it is furnished" was to advise him as to the lien, and enable him to protect himself from loss by withholding the amount due the contractors: the lien is not discharged by delay or irregularity in giving the notice where the owner was not prejudiced thereby.

3. The purchaser from the receiver of the claim of W. and T., the original contractors, not being entitled to protection as an innocent purchaser, stood in their place, and B. could enforce the lien against him, and was entitled to the fund in court though the notice given by B. was not a compliance with the statutory requirements.

4. Act of April 5, 1889, (Rev. Stats., 1895, art. 3296), construed and Wood v. Amarillo Imp. Co., 31 S. W. Rep., 506, followed.

3. **Jurisdiction of Person—Cross Action.**

Against a defendant who has not answered or appeared, a personal judgment can not be rendered on a cross action by another defendant, unless he has been served with citation upon such cross action.

APPEAL from District Court of Williamson County.  Tried below before Hon. F. G. MORRIS.

The opinion states the facts.

*Makemson & Fisher* and *W. D. Doom,* for appellant.—The fact that the contract between Whittle & Talbot and the defendant Nelson was made at a different time from the contract between Whittle & Talbot and H. W. Harrel, S. M. Woolsey, A. W. Carpenter, A. Short, William May and S. Holman for the erection of the buildings, did not prevent Whittle & Talbot from making a sub-contract with the defendant H. L. Breneman for the erection of all of the buildings under both contracts; nor would the fact that the contracts between Nelson and Whittle & Talbot and between Whittle & Talbot and the other defendants were made separate prevent the defendant H. L. Breneman from fixing his lien upon the whole property as a sub-contractor, it being entirely proper for the amount of the claim of the sub-contractor to be apportioned among the several owners according to their several contracts.  Carter Lumber Co. v. Simpson, 83 Texas, 370; Myers v. Houston, 30 S. W. Rep., 912; Lyon v. Logan, 68 Texas, 521.

2. The defendant H. L. Breneman having shown a lien fixed upon all the property of all of the owners, including A. J. Nelson, was entitled to have his mechanic's lien foreclosed as to a part of said property and against A. J. Nelson separately from that of the other owners who claimed together, and against the other owners for that part claimed by them.  Mills v. Paul, 30 S. W. Rep., 558.

3.   At the time of the service of the notice by the defendant H. L. Breneman on the defendants, who were the owners of the buildings, there was due and to become due from the said defendants to Whittle & Talbot for the erection of the buildings the sum of sixteen hundred and three and 47-100 dollars, eleven hundred and forty-three and 87-100 dollars of which was paid after the service of notice, and there was remaining in the hands of the owners of the buildings at the time of the trial four hundred and fifty-nine and 60-100 dollars, and the defendants Whittle & Talbot were indebted to the defendant H. L. Breneman on his sub-contract in the sum of sixteen hundred and thirty-four and 60-100 dollars, and it was not proper for the owners of the buildings after the service of notice by Breneman of the amount of his claim due on his sub-contract to use the money, due and to become due to Whittle & Talbot, to pay them, or B. A. Strange, the receiver, who was only their agent, to complete the buildings without providing for the claim of H. L. Breneman.   Dudley v. Jones, 77 Texas, 69;   Clark v. Gillespie, 70 Texas, 513;   Fagan v. Boyle, 65 Texas, 324;   Cook v. Murphy, 24 Atlantic Reporter, 630;   Armstrong v. Tabor, 12 Pacific Reporter, 157.

4.   Under the mechanic's lien law the service of notice upon the owners of the buildings had the effect of a garnishment and was sufficient diligence to fix the liability of the owners of the buildings for the payment of defendant Breneman's demand, without regard to whether he had a lien upon the property or not, and the defendants having brought into court and shown that there remained funds in their hands after completing the buildings under the contract with Whittle & Talbot, judgment should have been rendered against them in favor of the defendant H. L. Breneman for the amount in their hands instead of in favor of R. E. Brooks, who was the assignee of the receiver of Whittle & Talbot after the service of said notice.   Revised Statutes, articles 3175, 3176, Supplement to Sayles' Texas Civil Statutes;   Clark v. Gillespie, 70 Texas, 513;   Trammell v. Mount, 68 Texas, 210.

5.   The suit having been brought by the Beaumont Lumber Company against J. W. Whittle and W. E. Talbot, to which suit H. L. Breneman was made a party defendant on the ground that he was interested in the controversy as a lien holder, and citation having been served on J. W. Whittle and W. E. Talbot in the original suit, W. E. Talbot was in court for all purposes, and judgment should have been rendered in favor of the defendant Breneman against J. W. Whittle and W. E. Talbot, individually and as partners under the firm name and style of Whittle & Talbot.   Ward v. Lathrop, 11 Texas, 287;   Spencer v. McCarty, 46 Texas, 213;   King v. Goodson, 42 Texas, 81.

6.   The defendant W. E. Talbot, having been a member of the firm of Whittle & Talbot, at the time of the contract between H. L. Breneman and Whittle & Talbot, and he having been served with citation to answer in the cause, and being in court, judgment should have been rendered in favor of the defendant H. L. Breneman against the firm of Whittle & Talbot as well as against J. W. Whittle individually.   Revised

Statutes, article 1224; Railway Company v. McGaughey, 62 Texas, 271; Alexander v. Stern, 41 Texas, 193; Sanger v. Overmier, 64 Texas, 57; and Burnett v. Sullivan, 58 Texas, 535.

*West & Cochran* and *J. W. Parker*, for appellees Nelson, Woolsey, and associates.—1. It is not denied that Breneman could enter into the contract with Whittle & Talbot for the erection of all the buildings; but it is denied that, inasmuch as the contracts for the erection of the two buildings belonging to Nelson and of the five buildings belonging to Woolsey and associates were several, Breneman could fix a joint lien upon all the buildings to secure the payment of the amount due him upon his contract with Whittle & Talbot, as was attempted to be done. Act 21st Legislature, p. 113, sec. 12; 2 Jones on Liens, secs. 1314, 1315, 1323; and authorities cited in note 3 to last section; Gorgas v. Douglass, 6 Serg. and R., 520; Edgar v. Saulsbury, 17 Mo., 271; Schulenberg v. Robinson, 5 Mo. App., 561.

2. While the constitution gives a lien, in order for a claimant to fix it he must comply with the statute; and Breneman in his notice did not state the amount he claimed against the two buildings and the amount he claimed against the five buildings separately, but stated a lumping sum for which he claimed a lien against all the buildings, and the sworn account for labor and material filed by him did not discriminate between the two buildings built for Nelson and the five buildings built for Woolsey and associates, and the contract filed showed he was to receive an entire sum for the erection of all said buildings; and the notice given and sworn account and contract filed were, therefore, insufficient to fix any lien for separate amounts upon the two buildings and the five buildings, and a priori the court could not do it. Act 21 Leg., p. 111, sec. 2; 2 Jones on Liens, sec. 1323; and cases cited in note 3; also 2 Jones on Liens, sec. 1404.

3. The proof conclusively shows that Whittle & Talbot breached their contract to construct the buildings, because they abandoned work on the same, and that B. A. Strange, the receiver of their property, breached it, because he refused to complete the buildings, being wholly without funds to do it; and the respective owners of the buildings, being put to the necessity of completing the same at their own expense, and having done so at the least possible cost, are entitled to have the amounts thus expended offset against the contract price for the erection of the buildings; and the right of Breneman as a sub-contractor to fix his lien is subordinate to this right, for were it not so appellees would be compelled to pay more than they contracted to pay for the erection of their respective buildings; but allowing the amount expended by Nelson in the completion of his buildings, nothing remains due from him on the original contract price, and allowing the amount paid by Woolsey and associates in the completion of their buildings, only the sum of $459.76 remains on the contract price which amount they brought into court to be paid to whomsoever might be entitled to the same. Dudley v. Jones,

77 Texas, 70; Acts 21 Leg., p. 111, sec. 3, proviso; 15 Am. & Eng. Encycl. Law, 51 (b); 15 Am. & Eng. Encycl. Law, 78.

4. However, if it be considered the contract of Whittle & Talbot to erect the buildings was carried out by B. A. Strange as receiver of their property, then the money expended by him in so doing was necessary to preserve the buildings, the same being incomplete and in great danger of destruction or material damage, and the money being advanced by appellees, the receiver being wholly without funds, and without means to obtain any, was an expense of the receivership incurred in the preservation of the property, and in equity entitled to priority of payment over the claim of Breneman out of any balance owing by appellees to Whittle & Talbot for the completion of their respective buildings; and the said expense being approved by the court, it was proper to abate the contract price for the buildings pro tanto, and Breneman could not prevent this by giving notice of his intention to fix a lien or by fixing a lien, even admitting he had one, for, as before said, his contract rights were subordinate to those of appellees. Same authorities and Ellis v. Water Co., 86 Texas, 110.

5. Appellees Nelson and Woolsey and Carpenter, Holman, Short and May, and Harrell, are indifferent as to what relief is granted appellant Breneman as to the $459.76 paid into court or as to the judgment he may recover against Whittle & Talbot as a firm or as individuals, except they object to paying any costs on account of granting such relief; and this they should not be required to do, because they are not responsible for appellant's failing to get in the court below the proper relief in said respects, if it be true he did not.

*R. A. John,* for appellee Brooks.—Appellee R. E. Brooks adopts each of the foregoing counter propositions and statements, except the last one, made by appellees, as his brief in this case in response to the brief of appellant, and he prays that the judgment of the court below may be affirmed.

KEY, Associate Justice.—The Beaumont Lumber Company instituted this suit against several defendants, including appellant, seeking to establish a debt against Whittle & Talbot and to foreclose an alleged lien on the real property involved. Appellant answered, claiming that Whittle & Talbot owed him $1634.74 secured by a mechanic's lien on said real property, and asked for judgment for said amount against Whittle & Talbot and the owner of the real property, and for a foreclosure of his alleged lien. Talbot was not served with any notice of appellant's cross action, and he made no appearance in the case.

The court below filed findings of fact, which are not complained of, and which we adopt, merely adding that it was shown that the amounts paid out by Woolsey for the owners of the buildings, for labor and material to complete said buildings, were the fair and reasonable value of said labor and material. Said findings are as follows:

"1. On the first day of February, A. D. 1893, the defendants S. M. Woolsey and A. W. Carpenter, partners under the firm name and style of Woolsey & Carpenter, J. S. Holman, A. Short, William May, H. W. Harrel and A. J. Nelson were the owners in severalty of all those certain lots or parcels of land situated in the town of Hutto, in Williamson County, Texas, said lots being together described as follows, to-wit: Beginning 56 feet north, 10 deg. west from southeast corner of block 3, in the I. & G. N. R. R. addition to the town of Hutto. Thence north 10 deg. west 214 feet to the northeast corner of said block No. 3. Thence south 80 deg. west 125 feet for northwest corner of this tract. Thence south 10 deg. east 214 feet for southwest corner of this tract. Thence north 80 deg. 125 feet to beginning; said lots for convenience may be divided into seven lots 125 feet in length, five of them, beginning at the south side, being 30 feet in width, and the remaining two 32 feet in width, and numbered, beginning at the south side, one, two, three, four, five, six, and seven. As thus designated, the said defendants Woolsey and Carpenter owned lots numbers one and five; the defendants Holman, Short and May own lot number two; the defendant Harrel owned lots numbers three and four, and the defendant A. J. Nelson owned lots numbers six and seven.

2. On the first day of February, A. D. 1893, the said defendants, Woolsey & Carpenter, J. S. Holman, A. Short, William May and H. W. Harrel, entered into a contract in writing with J. W. Whittle and W. E. Talbot, who were partners engaged in the business of contractors and builders under the firm name and style of Whittle & Talbot, for the erection of five brick storehouses upon the five lots owned by them, the said five brick storehouses to be built as one building, with outside walls alike and simply partition walls between them, making each house thirty feet in width, and covering the five lots numbered from one to five, for the agreed price of $11,582.50, to be completed by the first day of June, A. D. 1893. Afterwards, but on the same day, the said defendant, A. J. Nelson, entered into a verbal contract with the said Whittle & Talbot for the construction of two brick storehouses to be built on his two lots numbers six and seven, in accordance with the plans and specifications prepared for the other five of the said buildings, and to be the same in every respect as the said five, except that they were to join the five buildings on the north and were to be thirty-two feet in width, instead of thirty feet, as set out in specifications for the five; the wall of the fifth building to be thirteen inches in thickness as in specifications, and the wall of the seventh house to be thirteen inches in thickness and finished the same as the said wall in the specifications; 4900, and it was agreed between Whittle & Talbot and the said A. J. Nelson that these two buildings were to be completed by June 30th, 1893, and that their contract should also be reduced to writing at some future time, but in fact never was, but was proceeded with upon the terms of the verbal agreement.

3. After both the contracts had been entered into, the defendants

Woolsey & Carpenter, Holman, Short, May and Harrel had a meeting in which they agreed upon the appointment of two of their number, namely, S. M. Woolsey and J. S. Holman, who were to be a building committee to represent the owners of the five lots and superintend the construction of the five buildings, and to pay out all moneys to be paid for the erection of the said buildings. The said defendants Woolsey and Carpenter, as partners, were the proprietors of a bank at Hutto known as the Hutto Bank.

4. After the work had begun, the said defendant A. J. Nelson asked the said defendants Woolsey and Holman to look after his interest in the construction of his buildings, and he directed said Woolsey, as proprietor of the Hutto Bank, out of funds to be deposited by him, to pay out the moneys which were to be paid under his contract with the said Whittle & Talbot, when he was not present.

5. On the fourth day of February, A. D. 1893, the said Whittle and Talbot and the defendant H. L. Breneman entered into a contract in writing, of that date, by the terms of which the defendant Breneman agreed and bound himself to and with the said Whittle & Talbot that in the erection of the said seven brick storehouses he would do all work and furnish all material necessary in making excavations for foundations, putting concrete in foundations, erecting of walls, both inside and out, and fire walls of brick, iron work for doors and tiling, all in full accordance with plans and specifications prepared for the first five of said buildings, the remaining two thereof being the same in every respect as the said five, except that they were to join the fifth building on the north and were to be thirty-two feet in width instead of thirty; as set out in said specifications for the five; the wall of the said fifth building to be thirteen inches in thickness as in specifications, and the wall of the seventh house to be thirteen inches in thickness and finished the same as the said fifth wall in the specifications. The said Breneman was also to furnish material and plaster all of said buildings same as provided in said specifications for the five, and all the material and work was to be first class in every particular and in all respects in full accordance with said specifications, which were referred to and made part of said contract. Breneman was also to set all cut stone furnished by Whittle & Talbot for caps and sills of windows and for furnishing material and doing the work as contracted to be furnished and done by him, Whittle & Talbot agreed and bound themselves to pay Breneman the sum of eight thousand dollars, to be paid in installments as such work should progress, on the first and fifteenth days of each month, on estimates of 75 per cent of the work done, and the balance when the work should be completed by him as therein provided; and it was also agreed that Breneman should complete all brick work on the five buildings covered by the said specifications in ninety days from the date of said contract, and on the remaining two buildings within thirty days thereafter: the plastering to be done immediately after the buildings were under cover and in condition to receive the same; the iron work for windows to be

done by Whittle & Talbot, and was not covered by the contract with Breneman.

6. In pursuance of his said contract, Breneman entered upon the work upon the seven buildings agreed to be done by him and finally finished it on the twenty-third day of June, A. D. 1893, at which time there was a balance due him on his contract of $3734.67. On the twenty-sixth day of June, A. D. 1893, he addressed a notice to S. M. Woolsey and A. W. Carpenter, partners under the firm name and style of Woolsey & Carpenter, J. S. Holman, A. Short, William May, H. W. Harrel and A. J. Nelson, or S. M. Woolsey, agent of all of said parties, advising them of the amount due him on the contract, describing the property and stating that on the expiration of ten days after the service of notice he would proceed to fix a lien on the seven brick storehouses and lots upon which they were situated, according to law, to secure the payment of his claim, and this notice was served on the defendant S. M. Woolsey on the 27th day of June, A. D. 1893. This notice did not state the amount claimed on the Nelson building, nor the amount claimed on the other buildings, but gave notice on one entire sum claimed against all the buildings in solido. On the 18th day of July, A. D. 1893, on final settlement between the said Whittle & Talbot and said Breneman, an account was made out in which Whittle & Talbot were charged with the contract price of the buildings of eight thousand dollars, and certain extra work amounting to $433.86, making $8433.86, and credited with $5600 paid on the contract, and with $503, the amount of damages which seemed to have been ascertained by some kind of arbitration settlement to the said seven buildings on account of some defect in the work of the said Breneman, and with $696.26, other payments made by Whittle & Talbot to H. L. Breneman, which left the amount due Breneman from Whittle & Talbot $1634.60. On the 22d day of July, A. D. 1893, Breneman made affidavit to the said account, showing that the sum of $1634.60 due him as shown by the account between himself and Whittle & Talbot, was unpaid, after allowing all just and lawful offsets, payments, and credits known to affiant; that the said labor was performed and materials furnished for and to Whittle & Talbot to be used in the erection of the said seven brick storehouses upon said lots by virtue of the said contract between Whittle & Talbot and Breneman, which contract was annexed to the said affidavit; that affiant had given ten days' notice in writing before the filing of his said lien to the said S. M. Woolsey, one of the said owners and agent of all the owners, of his said claim, as required by law, which notice was also thereto annexed, and that a copy of the said notice was delivered by the affiant to S. M. Woolsey on the 27th day of June, A. D. 1893; that the amount of $1634.60 accrued and became due from Whittle & Talbot to affiant on the 23d day of June, A. D. 1893, and that affiant claimed a lien on the said seven brick storehouses and lots upon which they were situated, to secure the payment thereof; which affidavit and claim of mechanic's lien, and the said contract and notice, and account thereto annexed, were filed for

record on the 22d day of July, A. D. 1893, at 2 o'clock p. m., and were correctly recorded on the 29th day of July, A. D. 1893, in the mechanic's lien record book No. 2, pages 232-236, of the records of Williamson County, Texas. The said contract, notice, account, and affidavit, with the certificate of record, are attached to (marked "Exhibit A") and made a part of the original answer of the defendant H. L. Breneman, and were introduced in evidence and here referred to and made a part of this find-- ing of facts.

7. There was no agreement between said A. J. Nelson and the own-- ers of the other five buildings that their contracts were to be blended. After work had begun Nelson spoke to S. M. Woolsey and J. S. Holman, and arranged with them that they would look after the construction of his buildings, and see that they were built according to contract, in his absence, and with Woolsey to pay out such moneys as were to be paid by him on his two buildings in the course of their construction, and all the moneys paid out for the construction of all of said buildings was in fact paid by the said S. M. Woolsey, through the Hutto Bank, on the said buildings, except $500 paid by A. J. Nelson to Whittle & Talbot on the 12th day of April, A. D. 1893, at Georgetown, Texas, and one or two payments by him in person when present in Hutto on pay-day. The course pursued by the owners of the buildings when a payment was to be made for work thereon was for Whittle & Talbot to make an estimate of the amount of work done on each building and present same to Wool- sey and Holman for their approval. For such amount as they approved Woolsey would give them a check against his own bank, and charge the same against his "building fund" account, and then charge up the sep- arate estimate for each building against the individual account of the owner thereof in his bank. This manner of keeping the account was a manner devised by Woolsey for keeping the books of the bank, and was not done at the suggestion or with the knowledge of any of the other owners.

8. After the original contract Nelson desired to make his north build- ing taller, and contracted with Whittle & Talbot to make the change for an additional compensation of $500, and Breneman accepted the change, and for his part of additional work made charge for extras in his account. At the time Breneman finished the contract with Whittle & Talbot on June 23, 1893, there had been paid on the Nelson contract, including the $500 paid by Nelson on April 12, 1893, to Whittle & Tal- bot in Georgetown, the sum of $4360, leaving still to be paid thereon the sum of $1040, not counting the damage thereto by reason of Brene- man's failure to build the same high enough.

9. At the time Breneman finished the contract with Whittle & Tal- bot on June 23, 1893, there had been paid on the contract with the own- ers of the other five buildings the sum of $9604.53, leaving the amount of $1977.97 still to be paid thereon, not counting the damage thereto by reason of Breneman's failure to build the same high enough.

10. On June 16, 1893, in a suit No. 2925, brought by W. E. Talbot

v. J. W. Whittle for a settlement of their firm business, B. A. Strange was appointed and qualified as receiver of the property belonging to the said partnership, and by an order of the court was directed to take charge of certain contracts which the said firm then had on hand and under way, including the said contract for the erection of the seven brick storehouses at Hutto, and on the —— day of ———, 1893, he was authorized to issue receiver's certificates to raise funds necessary to carry on said receivership, but owing to the fact that no market could be found for such certificates, the same were not issued. And in pursuance of said first order, said Strange, as receiver, took charge of said contract for the erection of said seven buildings without objection from the owners thereof, and proceeded with the work, allowing Breneman to complete his said contract, which he did on June 23, 1893, seven days after the appointment of Strange as before stated. Breneman, however, at the time of the appointment of the receiver, had finished all brick work, and he only did thereafter a few days' plastering on the buildings.

11. After the service of the said notice by Breneman of his claim, on the twenty-seventh day of June, A. D. 1893, there was paid by S. M. Woolsey, through the Hutto Bank, and by the same process already described, to the persons doing work and furnishing material actually necessary for the completion of the two buildings of the said A. J. Nelson, the sum of $915, and Nelson was further allowed a credit of $128.50, as his proportion of the amount of $503, charged against Breneman and allowed in his account for damages on account of defect in his work, and this, together with the amount paid on the Nelson buildings before the service of said notice, makes $5403.50, or $3.50 more than the contract price.

12. After the service of the said notice by Breneman of his claim on the twenty-seventh day of June, A. D. 1893, there was paid by S. M. Woolsey, through the said Hutto Bank, and by the same process already described, to persons doing work and furnishing material actually necessary for the completion of the other five buildings, the sum of $1143.87, and the owners of the said five buildings were further allowed a credit of $374.50, their proportion of the amount of $503 charged against Breneman and allowed in his account for damages on account of defect in his work, and this, with the amount of $9604.53 paid before the service of said notice, makes $11,122.90, leaving still unpaid on said contract for said five buildings $459.60, which amount was paid and deposited in court on July 13, 1894.

13. In the payments made to Whittle & Talbot and to Breneman, and to complete said buildings, there was no distinction made as to the amount paid upon each of said buildings when payments were made by the Hutto Bank, but the payments were paid in bulk by said bank, and the appropriations to each of said buildings were made by the said S. M. Woolsey in the bank account kept by the Hutto Bank, so that it was known among them at the time how much each party had paid, and how much was still unpaid by him.

14. All of the moneys paid out on the contracts for the completion of the said seven buildings, after the receiver was appointed, were paid for labor and material performed and furnished, and necessary for the completion of the said seven buildings, and the defendants declined to pay to the receiver the balance of $459.60, which remained in their hands and was deposited in court as aforesaid. There being no market for receiver's certificates, they were never issued, and the receiver had no money on hand at all until about September 1, 1893, and from that time, from other contracts and sources, he received of the estate of Whittle & Talbot, by January, 1894, between three and four thousand dollars, which was distributed among the unsecured creditors of the said Whittle & Talbot in said suit of W. E. Talbot against J. W. Whittle, No. 2925, in which distribution the said H. L. Breneman did not participate, and to which suit he was not a party.

15. During the time of the erection of the said seven buildings, the plaintiffs, the Beaumont Lumber Company, furnished Whittle & Talbot certain lumber and material, by means of which Whittle & Talbot became indebted to said plaintiffs in the sum of $2798.55, for which the plaintiffs attempted to fix a mechanic's lien upon the said five buildings, but a demurrer to that part of their petition setting up the lien was sustained, and no evidence was introduced on that subject

16. The plaintiffs, the Beaumont Lumber Company, made H. L. Breneman a defendant in this suit, on the ground that he claimed some lien upon, or interest in, said five brick storehouses, and he, by his original answer, made A. J. Nelson a party defendant to the suit.

17. R. E. Brooks, intervenor, proved a sale and assignment by the receiver of Whittle & Talbot, under order of the court, to him of the amount due and remaining unpaid on the said contract for the erection of the said seven brick storehouses.

18. At the time of the appointment of the receiver the firm of Whittle & Talbot, and J. W. Whittle and W. E. Talbot, were, and are now, insolvent.

19. That H. L. Breneman, at the time he made his contract with Whittle & Talbot, was told by Whittle that his firm had two contracts for the construction of the seven buildings, one being with the owners of the five, by which these were to be built by June 1, 1893, and another with Nelson for the construction of his two buildings, to be completed thirty days after the completion of the first five.

20. When Strange was appointed as receiver, and took charge of the work upon the seven buildings in behalf of the firm of Whittle & Talbot, said buildings were then incomplete, and were exposed to damage by rain, and it was necessary to proceed immediately and without delay in the completion of the work, to avoid damage to the work and material already used, and to render the buildings of any service to the owners thereof. . The court further finds that at the time the said receiver assumed control, he had no money on hand with which to complete the work, and that there then was no immediate prospect of his getting

money so to do. And further, that in completing the said contracts the receiver's name was simply used to make contracts with persons to perform labor and furnish material, with the distinct understanding first made with Woolsey, acting for the owners of the buildings, and with the persons doing such labor and furnishing such material, that Woolsey would pay such persons directly for the work and material immediately upon the completion of such work. In this connection the court further finds that the receiver did not receive or handle any of the money expended in completing the buildings, but the same was paid directly to the different persons employed and contracted with to complete the work."

The district court held that appellant had no lien on the houses and lots, and that intervenor, R. E. Brooks, was entitled to the $459.60 paid into the registry of the court; gave appellant a personal judgment for his debt against J. W. Whittle, but dismissed his suit as to W. E. Talbot.

*Opinion.*—1. Conceding that appellant had a mechanic's lien on the houses and lots, we agree with the trial court in holding that the owners of said houses and lots were not liable to him for the amounts they were compelled to pay to others in order to protect and complete the buildings after receiving notice of his claim. They had not obligated themselves to pay appellant for his labor and material; and, being a sub-contractor under Whittle & Talbot, his lien merely subrogates him to such rights as they had against the owners of the houses; and it is clear from the facts that had Whittle & Talbot, or their representative, sued to recover the contract prices for building the houses, the owners could have successfully pleaded as offsets the amounts so paid by them to complete the buildings.

2. We do not concur with the District Court in holding that appellant was not entitled to recover the amount which the owners of the houses admitted they were owing under their contract with Whittle & Talbot.

That court based its ruling upon the fact that Nelson had a separate contract with Whittle & Talbot for the erection of his two houses, and the notice of appellant's claim did not show how much was owing for labor and material on Nelson's houses and how much on the others. It may be that the notice referred to was not in compliance with section 12 of the act of April 5, 1889, relating to mechanics' and other liens. But, conceding such non-compliance, it does not necessarily follow that appellant had no lien. In deciding a similar question in Wood v. Amarillo Improvement Co., 31 S. W. Rep., 506, Chief Justice Gaines said: "It may be conceded for the purposes of this opinion, that the record shows that all the lumber, except the last items, which appear upon Robinson & Abell's account, and amount in value to $527.21, were furnished to the contractors prior to August 14, 1891, and that no notice was given to the improvement company prior to that date. Section 37 of article 16 of the Constitution provides that: 'Mechanics, artisans

and material men of every class shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor, and the legislatue shall provide by law for the speedy and efficient enforcement of said liens.' This provision, as we have frequently held, gives the lien, and simply makes it the duty of the legislature to provide for its enforcement. It is manifest that this differs materially from other provisions found in our Constitution, which confer a right or a jurisdiction to be exercised 'under such regulations as may be provided by law.' It may be conceded that from the necessity of the case it must have been contemplated that in providing for the enforcement of the liens given by the section quoted, the legislature should have the power to make such reasonable regulations as are requisite to protect the rights of all persons who may have an interest in the contract or in the property. But the power to facilitate the enforcement of the lien neither includes nor implies the power either to destroy it or to hamper it by unreasonable restrictions. In construing the statute made in pursuance of this constitutional provision, we should not impute to the legislature an intention to violate either its letter or its spirit by imposing upon the lien-holder unreasonable and unnecessary restrictions. The third section of the act of April 5, 1889, is in part as follows: "Any person or firm who may furnish any material to any contractor, to be used in the erection of any house, building or improvement, or to repair any house, building or improvement, by giving written notice to·the owner of such house, building or improvement, or his agent or representative, of each and every item as it is furnished, and by showing how much there is due and unpaid on each bill of lumber furnished by said lumberman or material man under said contract, at any time within ninety days after the indebtedness shall have accrued, may fix and secure the lien provided for in this act as to the material furnished at the time or subsequent to the giving of the written notice above provided for, by filing in the office of the county clerk of the county in which such property is situated, an itemized account of his or their claim as provided in this section, and cause the same to be recorded, in a book kept by the county clerk for that purpose." Laws 1889, p. 110. The object of the Act in requiring notice to be given to the owner of each "item as it is furnished" was to advise him as to the lien, and thereby to enable him to save himself from loss by withholding from any amount which might be due to the contractors a sufficient sum to discharge it; and it may be that, should a material man fail to give immediate notice of any material furnished, and should the owner pay out all that is due to the contractor under the contract, the lien would be lost. But where there has been delay in giving the notice, and the owner has not been prejudiced thereby, we see no reason why the lien should be discharged. To so construe the provision would cause it to impose an unreasonable and unjust restriction upon a right given absolutely by the fundamental law. Such a construction is not to be tolerated."

It seems to us that the doctrine announced in the above quotation has direct application to this case. The intervenor, Brooks, to whom the court adjudged the $459.60 admitted by the owners of the buildings to be due to Whittle & Talbot, holds under the latter. It cannot be and is not pretended that he is entitled to protection as an innocent purchaser. He is merely subrogated to Whittle & Talbot's rights; and if, as against them, appellant can enforce his lien, he can do so against Brooks. Now if the controversy was between appellant and Whittle & Talbot, under the authority of the case cited and quoted from, we would feel compelled to hold that, although appellant may not have complied with the statutory requirement as to notice, as no one was prejudiced by his failure to do so, he had not waived the lien created by the Constitution. Myers v. Houston, 30 S. W. Rep., 912; Warner Mfg. Co. v. Maverick, 30 S. W. Rep., 438.

3. W. E. Talbot not having answered or otherwise entered an appearance, and appellant not having him served with citation upon his cross-action, he was not entitled to any judgment against him.

As between appellant and intervenor, R. E. Brooks, the judgment of the District Court will be set aside, and judgment will be rendered by this court for appellant for the $459.60 deposited with the clerk of the court below, and that said Brooks recover nothing and pay the costs of this appeal; and, in all other respects, the judgment appealed from will be affirmed.

*Reformed and affirmed.*

Delivered February 9, 1896.

Writ of error refused.